UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ALAN MARTINEZ, | ) | |
| Institutional ID No. 1381288, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:13-CV-286-BG |
| MARICELA GARZA, Lieutenant, | ) | ECF |
| Texas Department of Criminal Justice, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Plaintiff Alan Martinez filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights during his incarceration at the Preston E. Smith Unit (Smith Unit) of the Texas Department of Criminal Justice (TDCJ). Martinez claims that Defendants used excessive force during an incident during in which he refused to relinquish control of his food tray. He seeks compensatory damages and injunctive relief.

**I.   Procedural History**

Martinez filed his Complaint on December 16, 2013. He named as Defendants the following TDCJ employees: Lieutenant Maricela Garza, who authorized the use of force; Sergeant Bryson McIntire, who supervised the five-person cell extraction team; Kimberly Williams, who operated the video camera; and Christopher Sanchez, Nathaniel Chavez, and Joseph Felan, three cell extraction team members who allegedly conspired to assault Martinez.

Pursuant to 28 U.S.C. § 636(b)(1), the United States District Court transferred this case to the undersigned United States Magistrate Judge for further proceedings. The undersigned thereafter

reviewed authenticated records from TDCJ and conducted a preliminary screening on April 15, 2014, as directed by 28 U.S.C. § 1915(e)(2) and pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985). At the hearing, Martinez consented to proceed before the undersigned magistrate judge. After considering Martinez's Complaint, his testimony at the *Spears* hearing, authenticated records provided by the TDCJ, and applicable law, the court determined that Martinez's claim regarding that he was subjected to an excessive use of force on April 26, 2013, survived preliminary screening.

The court thereafter entered an order to answer as to the Defendants on May 6, 2014. Along with the order, the clerk forwarded a consent form and instructions to the Defendants regarding their right to proceed in this action before the United States Magistrate Judge.

Defendant Maricela Garza filed a motion to dismiss on June 9, 2014. Martinez filed a response to the motion to dismiss on July 15, 2014. Defendants Nathaniel Chavez and Bryson McIntire filed an original answer and jury demand also on June 9, 2014. Defendants Joseph Felan and Kimberly Williams filed an original answer and jury demand on July 25, 2014.

On June 9, 2014, the Office of the Attorney General for the State of Texas advised the court that Defendant Christopher Sanchez was no longer employed with the Texas Department of Corrections and provided the last known address of Defendant Sanchez. However, the United States Marshals Service was unable to serve process on Defendant Sanchez at the address provided by the Attorney General, and the summons was returned unexecuted on July 3, 2014 (ECF No. 27). After a public records search online, the undersigned subsequently entered a second order for service directing the United States Marshals Service to serve Defendant Sanchez at an updated address (ECF No. 47). The second summons was also returned unexecuted on January 6, 2015 (ECF No. 51). The

undersigned also entered an order on October 24, 2014, requiring Martinez to provide the court with the location and address of Defendant Sanchez (ECF No. 42).  The court advised Martinez that failure to provide the court with such information could result in *sua sponte* dismissal of Martinez's claims against Defendant Sanchez.  To date, Martinez has not provided the court with the address and location of Defendant Sanchez.  Defendant Sanchez has not filed an answer.

As of this date, no consent has been filed with the court on behalf of any of the Defendants. In regard to the dispositive issues in this case, the undersigned now files this Report and Recommendation.

## II.   Account of Events on April 26, 2013

Martinez's claims arise from an incident in which he refused to relinquish control of the food tray slot in his cell door on April 26, 2013; afterward, a five-person cell extraction team was deployed to his cell in order to regain control of the food port.

### A.   Martinez's Account of the Incident

In his Complaint and in his sworn testimony at the *Spears* hearing, Martinez admits that he tied and took control of the food slot.  He refused to relinquish control of the food slot several times; thus, Defendant Maricela Garza ordered deployment of the five-person cell extraction team, which included Defendants Christopher Sanchez, Nathaniel Chavez, and Joseph Felan. Martinez alleges that Defendant McIntire gassed him three times.  At the *Spears* hearing, Martinez admitted that he was warned he would be gassed if he did not relinquish control of the food slot.  Thereafter, Martinez alleges that the five-person team ran into his cell and beat him until he was unconscious and needed medical attention, even after he had stopped resisting.  Martinez testified at the *Spears* hearing that Defendant Garza yelled at him to stop resisting even after he was on the ground and no

3

longer resisting. As a result of the incident, Martinez alleges he suffered a gash on his head, bruising on his cheek, and painful ribs. He also alleges that Defendant Williams—who was video recording the incident—moved the camera in certain angles so that the use of force could not be seen.

    **B.**    **Video and Photographic Evidence of Incident**

The video recording begins with Sergeant McIntire introducing the five-person team. Defendant Sanchez is introduced as "two man" wearing vest number 14; Defendant Chavez is introduced as "three man" wearing vest number 19; and Defendant Felan is introduced as "five man" wearing vest number 12. Two other officers—Officers Westbrook and Rodriguez—who Martinez did not name as defendants, were also introduced as part of the five-person team.

Once the team is cell-side, the video shows Martinez throwing his mattress against his cell door. Officer Westbrook places his shield against the food slot, and Defendant McIntire warns Martinez to untie the food slot or chemical agents will be released. Defendant Garza comes to the closed cell door and repeats the same warning and then states that Martinez is refusing to comply. The team then proceeds to open the cell door a few inches, and as Martinez pushes his mattress up against the door, Defendant McIntire sprays chemical agents into his cell for the first time.

The cell door is shut and the team waits several minutes; Officer Westbrook continues to hold a shield against the food slot. Martinez hits Officer Westbrook's shield several times in an aggressive manner. Martinez is again warned by Defendants McIntire and Garza to release the food slot or chemical agents will be released and a five-person team will be used. Martinez does not comply, and Defendant McIntire sprays chemical agents into the cell a second time as Martinez attempts to block the spray with his mattress. A few more minutes pass, and Martinez yells inaudibly. He mentions Defendant Garza at one point.

Martinez is warned a third time—again by Defendants McIntire and Garza—to untie the food slot or a five-person team will be used. Martinez again does not comply, and Defendant McIntire releases chemical agents into Martinez's cell for a third time and the officers wait once again. At this point in the video, eighteen minutes have passed since the five-person team first appeared outside Martinez's cell. Martinez continues to disobey and pound on his cell door. The team then enters the cell and tackles Martinez. The video footage at this point does not clearly record the events, as the team's bodies block the view of Martinez. However, Defendant Chavez—who is wearing vest number 19—is seen punching Martinez as he is on the ground. Defendant Chavez's face mask begins to come off as he is punching and restraining Martinez.

After subduing Martinez on the ground, the team applies arm and foot restraints to Martinez and assists him to his feet. Martinez states that he is bleeding and is suicidal and homicidal. One of the officers takes photos of Martinez, who keeps looking down and turning his head despite the officer's orders to look up. The officers then escort him to another area of the prison, where they remove his shoes and jumper so that he can be decontaminated of the chemical agents. Martinez is then moved to a holding cell, and his restraints are removed. He is asked if he has any injuries, to which he replies, "Yeah, I got injuries. You not see my [. . .] face" along with many other expletives. After reciting standard language, the officers state to the camera that medical personnel are not on staff at the time and the video is terminated.

The video resumes the next morning on April 27, 2013, at 6:41 a.m. An officer states that Martinez was transported to the hospital, evaluated, and is now medically cleared to be released to security. The video ends at this point. The DVD on which the video is contained also includes the still pictures the officer took of Martinez's face. The photos are blurry, but they do show that

5

Martinez's face is bloody.

### C.    Authenticated Medical Records Regarding Martinez's Medical Treatment

Following the incident on April 26, 2013, Martinez was taken to Medical Arts Hospital in Lamesa, Texas, for evaluation. He was admitted at 3:26 a.m. the morning of April 27, 2013. The notes state that Martinez had "an altercation with officers of the TDCJ" and had "a cross lesion forehead superficial 2 to 2.5 cms hematoma Rt orbital area." The emergency room physician examined Martinez and repaired the subcutaneous laceration on his forehead with Dermabond—a type of surgical glue used to seal wounds—and 1% lidocaine, which is a topical anesthetic. Martinez was prescribed Tegretol, aspirin, and Tylenol and was released back to the prison for follow-up with a private physician as needed. Medical notes from the April 26, 2013, incident also state that Martinez was placed on one-on-one constant and direct observation to await transfer to crisis management at the Clements Unit.

On May 6, 2013, Martinez was evaluated during a follow-up appointment in the medical clinic where x-rays were taken of his chest and abdomen. It was determined that he did not have any fractures to his ribs.

### D.    Administrative Review of April 26, 2013, Incident

On May 9, 2013, an administrative review report of the April 26, 2013, incident was issued. A summary of the incident states that Officer Westbrook—who is not a defendant in this case—struck Martinez with his shield impacting his forehead. The report also notes that when Martinez attempted to remove Defendant Chavez's gas mask, Chavez reacted and struck Martinez multiple times on the right side of his head and face. Defendant McIntire, who was supervising the five-person team cell side, yelled at Defendant Chavez to stop hitting Martinez, according to the

6

report.

As a result of his actions, Defendant Chavez was disciplined and placed on probation for three months for striking Martinez during the April 26, 2013, incident. Defendant Chavez was charged with a level 3, number 24a violation, which is entitled "Use of Excessive/Unnecessary Force–Provoked without Serious Injuries." Defendant McIntire was issued a "Letter of Instruction," which served as an informal action to correct his behavior for "vulgar language" during the April 26, 2013, incident. The language was recorded on the videotape. Defendant McIntire was also issued a "Letter of Instruction" because Martinez was not taken for decontamination after he was exposed to chemical agents. This procedure was required even though the officers took Martinez outside to decontaminate.

### III. Discussion

#### A. Preliminary Screening Standard

A court must dismiss a complaint filed *in forma pauperis* by a prisoner if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2014). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacking an arguable basis in fact rests upon clearly baseless factual contentions, while a complaint lacking an arguable basis in law rests upon indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). In reaching a frivolous determination, the court may consider reliable evidence such as the plaintiff's allegations, sworn testimony obtained at a *Spears* hearing, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see*

*also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings).

      **B.**      **Defendant Maricela Garza's Motion to Dismiss**

Defendant Garza seeks to dismiss Martinez's claims against her for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). She argues that Martinez is merely suing her in a supervisory capacity and that Martinez has not alleged facts demonstrating her personal involvement or a causal connection between her acts or omissions and the alleged excessive use of force. Garza's Mot. to Dismiss, at 2–3 (ECF No. 14).

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)*; Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept well-pled facts as true and view them in the light most favorable to the plaintiff. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan, Stanley, Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). The court need only determine whether the plaintiff has stated a legally cognizable claim; it does not evaluate whether the plaintiff is ultimately likely to prevail. *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *Fee v. Herndon*, 800 F.2d 804, 807 (5th Cir. 1990)). Rule 12(b)(6) motions are disfavored and granted sparingly. *See Collins v. Morgan, Stanley,*

*Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

Here, Defendant Garza argues that Martinez's claims against her should be dismissed because Martinez's allegations do not support a claim of supervisory liability. Ordinarily, liability of government officials for the unconstitutional conduct of their subordinates may not rest solely upon a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676; *see also Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425–26 (5th Cir. 2006) (citing *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)) ("There is no vicarious or *respondeat superior* liability of supervisors under section 1983."). Specifically, a supervisory official may be held liable only if: (1) she personally participated in acts that violated the plaintiff's constitutional rights; (2) a sufficient causal connection exists between her wrongful conduct and the constitutional violation; or (3) she implemented an unconstitutional policy that directly resulted in injury to the plaintiff. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates*, 537 F.3d at 435); *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987).

Accepting all of the facts as true and in a light most favorable to Martinez, Martinez has stated a claim that Garza's acts were causally connected to the alleged excessive use of force. In his Complaint, Martinez alleges that Defendant Garza was the supervisor that ordered the five-person team to deploy to Martinez's cell. In addition, at the *Spears* hearing Martinez testified that Defendant Garza, who was cell side during the incident, did not do anything to stop the alleged excessive use of force and yelled for Martinez to stop resisting, although he states he had already ceased resisting. Martinez has not only alleged that Defendant Garza supervised the five-person team, but that she was present during the incident and failed to stop the alleged excessive use of force. *See Porter*, 659 F.3d at 446; *see also Eason v. Holt*, 73 F.3d 600, 601–03 (5th Cir. 1996)

9

(explaining that when a defendant has filed a 12(b)(6) motion, "the *Spears* hearing testimony, modifying the complaint, bears on the evaluation of the legal sufficiency of the claim").

Consequently, Martinez has pled sufficient facts such that dismissal of his claims against Defendant Garza is inappropriate at this stage. Accordingly, Defendant Garza's motion to dismiss for failure to state a claim should be denied.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court deny Defendant Garza's motion to dismiss and enter a scheduling order in regard to this action.

## V. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:     March 13, 2015.

_____
NANCY M. KOENIG
United States Magistrate Judge